UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| LINDA KOLL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GATE CITY BANK,<br><br>Defendant. | Cause No.<br><br>**JURY DEMAND** |

**CLASS ACTION COMPLAINT**

Plaintiff Linda Koll brings this Class Action Complaint against Defendant Gate City Bank ("Defendant"), and alleges as follows:

**INTRODUCTION**

1. This is a civil action seeking monetary damages, restitution, and declaratory relief from Defendant, arising from its improper assessment and collection of multiple $32 fees on an item.

2. Besides being deceptive, unfair, and unconscionable, this practice breaches express promises made in Defendant's adhesion contracts to only assess a single fee on an item.

3. Plaintiff and other Defendant customers have been injured by Defendant's practices. Plaintiff, individually and on behalf of the class of individuals preliminarily defined below, seeks damages, restitution, and injunctive and declaratory relief for

1

Defendant's breach of contract and the duty of good faith and fair dealing, and/or unjust enrichment, and violations of the Consumer Fraud Act, M.S.A. § 325F.68 *et seq*.

## PARTIES

4. Plaintiff is a citizen of St. Cloud, MN, and has had a checking account with Defendant at all times material hereto.

5. Defendant is headquartered and has its principal place of business in Fargo, ND; therefore it is a citizen of North Dakota. Defendant does business at 44 locations throughout North Dakota and Minnesota, including in this District. Defendant has more than $3 billion in assets. Defendant is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative Class.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class (including Plaintiff) is a citizen of a State different from the Defendant. The number of members of the proposed Class in aggregate exceeds 100 accountholders. 28 U.S.C. § 1332(d)(5)(B).

7. This Court has personal jurisdiction over the Defendant because it resides in, regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this District.

2

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

**I.      Defendant Improperly Charges Two Or More Fees on an Item**

9.      Overdraft fees and insufficient funds fees ("NSF fees") are among the primary fee generators for banks. According to a banking industry market research company, Moebs Services, in 2018 alone, banks generated an estimated $34.5 billion from overdraft fees. *Overdraft Revenue Inches Up in 2018*, https://bit.ly/3cbHNKV.

10.     Unfortunately, the customers who are assessed these fees are the most vulnerable customers.  Younger, lower-income, and non-white account holders are among those who were more likely to be assessed overdraft fees. *Overdrawn: Consumer Experiences with Overdraft*, Pew Charitable Trusts 8 (June 2014), https://bit.ly/3ksKD0I.

11.     Because of this, industry leaders like Bank of America, Capital One, Wells Fargo, Alliant, and Ally have made plans to end the assessment of OD or NSF fees entirely. *See* Hugh Son, *Capital One to Drop Overdraft Fees for All Retail Banking Customers*, NBC News (Dec. 1, 2021), https://nbcnews.to/3DKSu2R; Paul R. La Monica, *Wells Fargo Ends Bounced Check Fees*, CNN (Jan. 12, 2022), https://bit.ly/3iTAN9k.

12.     In line with this industry trend, the New York Attorney General recently asked other industry leading banks to end the assessment of all OD Fees by the summer of 2022. *NY Attorney General asks banks to end overdraft fees*, Elizabeth Dilts Marshall, Reuters (April 6, 2022).

13. Through the imposition of these fees, Defendant has made substantial revenue to the tune of tens of millions of dollars, seeking to turn its customers' financial struggles into revenue.

14. Defendant unlawfully maximizes its already profitable fees through its deceptive and contractually-prohibited practice of charging multiple NSF fees, or an NSF fee followed by an overdraft fee, on an item.

15. Unbeknownst to consumers, when Defendant reprocesses an electronic payment item, ACH item, or check for payment after it was initially rejected for insufficient funds, Defendant chooses to treat it as a new and unique item that is subject to yet another fee. But Defendant's contract never states that this counterintuitive and deceptive result could be possible and, in fact, says nothing at all about how overdraft fees or NSF fees are assessed.

16. The Federal Deposit Insurance Corporation (the "FDIC") has expressed concern with the practice of assessing multiple fees on an item. In 2012, the FDIC determined that one bank's assessment of more than one NSF Fee on the same item was a "deceptive and unfair act." *In the Matter of Higher One, Inc., Consent Order*, Consent Order, FDIC-1 1-700b, FDIC-1 1-704k, 2012 WL 7186313.

17. This abusive practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one fee on the same item when it is reprocessed. Instead, Chase charges one fee even if an item is reprocessed for payment multiple times.

4

18. Defendant, however, engages in this abusive and deceptive practice in violation of its own contract and against the reasonable expectations of its customers.

### A. The Imposition of Multiple Fees on a Single Item Violates Defendant's Contract

19. Plaintiff has a Defendant checking account, which is governed by the Terms and Conditions of Your Account, attached as Ex. A hereto, and the Fee Schedule, attached as Ex. B hereto (collectively, the "Contract").

20. The Contract states that if there is not sufficient funds in the account to cover a transaction, "[y]ou will be charged an NSF or overdraft fee according to our NSF or overdraft fee policy." Ex. A at 3.

21. These fees are set forth on the Fee Schedule, which states:

| | |
|---|---|
| **NSF Fee** This fee is imposed when a NSF condition is created by check, in-person withdrawal, ATM withdrawal, or other electronic means | $32/item |

Ex. B at 1 (emphasis in original).

22. Taken together, the Contract promises to assess "a" $32 fee (singular) will be assessed "/item" or per "item."

23. In breach of this promise, Defendant assesses multiple fees per item.

24. Further, "a NSF condition" can only be created by the accountholder's original order or instruction to pay the item (*e.g.*, the "check," the "in-person withdrawal," the "ATM withdrawal," or other "electronic" item).

25. Defendant cannot recreate "a NSF condition" by repeatedly reprocessing the same item.

26. The Contract <u>never</u> discusses a circumstance where Defendant may assess multiple fees for a single check, electronic payment item, or ACH item that was returned for insufficient funds and later reprocessed one or more times and returned again.

27. The same item on an account cannot conceivably become a new one when it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit it.

28. Even if Defendant reprocesses an instruction for payment, it is still the same item. Its reprocessing is simply another attempt to effectuate the original order or instruction created by the accountholder.

29. There is zero indication anywhere in the Contract that the same item is eligible to incur multiple fees.

30. Reasonable consumers understand any given authorization for payment to be one, singular item, or instruction from the customer to the bank for payment to a merchant.

31. Nowhere do Defendant and its customers agree that Defendant will treat each reprocessing of a check, electronic payment item, or ACH item as a separate item, subject to additional fees.

32. Customers reasonably understand that Defendant's reprocessing of checks, electronic payment items, and ACH items are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger fees. In other words, it is always the same item.

33. Banks and credit unions like Defendant that employ this abusive practice require their accountholders to expressly agree to it—something Defendant did not do.

34. Community Bank, NA, discloses its fee practice in its online banking agreement, in all capital letters, as follows:

> We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. **You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.**

*Overdraft and Unavailable Funds Practices Disclosure*, Community Bank N.A. 5 (Nov. 12, 2019), https://bit.ly/3uQafe7 (emphasis added).

35. Defendant's Contract provides no such authorization.

### B. Plaintiff's Experience

36. In support of Plaintiff's claim, Plaintiff offers an example of fees that should not have been assessed against Plaintiff's checking account. As alleged below, Defendant: (a) reprocessed a previously declined item; and (b) charged a fee upon reprocessing.

37. On or around September 17, 2021, Plaintiff attempted a single payment.

38. Defendant rejected payment of that item and charged Plaintiff a $32 fee for doing so.

39. Unbeknownst to Plaintiff and without Plaintiff's request to Defendant to reprocess the item, on or around September 22, 2021, Defendant processed the same item again, rejected the item again, and charged Plaintiff a *second* $32 fee for doing so.

40. *In sum, Defendant charged Plaintiff $64 in fees on an item.*

41. Plaintiff understood the payment to be a single item, capable of receiving, at most, a single fee.

42. Defendant understood the payment to be single item too as evidenced by the fact that its own account statements show additional submissions of the same item by the merchant as a "RETRY PYMT" of the original item and not a new item.

43. Defendant also assessed Plaintiff multiple fees on an item on November 18, 2021 and November 23, 2021; February 17, 2022 and February 28, 2022; and February 22, 2022 and February 25, 2022.

44. The improper fees charged by Defendant were not errors, but rather intentional charges made by Defendant as part of its standard processing of items.

45. Plaintiff therefore had no duty to report the fees as errors.

46. Moreover, any such reporting would have been futile as Defendant had made a decision to charge fees in this specific manner to maximize profits at the expense of customers.

### C. The Imposition of Multiple Fees on a Single Item Breaches Defendant's Duty of Good Faith and Fair Dealing

47. Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that Defendant is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, Defendant has a duty to honor payment requests in a way that is fair to Plaintiff and its

8

other customers and is prohibited from exercising its discretion to pile on ever greater penalties on the depositor. Here—in the adhesion agreements Defendant foisted on Plaintiff and its other customers— Defendant has provided itself numerous discretionary powers affecting customers' accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, Defendant abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same item.

48. Defendant exercises its discretion in its own favor and to the prejudice of Plaintiff and its other customers when it reprocesses an item when it knows a customer's account lacks funds and then charges additional fees on the same item. Further, Defendant abuses the power it has over customers and their bank accounts and acts contrary to their reasonable expectations under the Contract. This is a breach of Defendant's duty to engage in fair dealing and to act in good faith.

49. It was bad faith and totally outside of Plaintiff's reasonable expectations for Defendant to use its discretion to assess two or more fees on an item.

50. Defendant abuses its discretion and acts in bad faith by charging multiple fees on the same item.

## CLASS ALLEGATIONS

51. Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Fed. R. Civ. P. 23. The proposed Class is defined as:

All consumers of Gate City Bank who, during the applicable statute of limitations, were charged more than one fee on an item on a Gate City Bank checking account.

52. Excluded from the Class are Defendant, its subsidiaries and affiliates, its officers, directors, the members of their immediate families, and any entity in which Defendant has a controlling interest, to include the legal representatives, heirs, successors, or assigns of any such excluded party. Also excluded are the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

53. Plaintiff reserves the right to modify or amend the definition of the proposed Class if necessary before this Court determines whether certification is appropriate.

54. This case is properly brought as a class action under Rule 23, and all requirements therein are met for the reasons set forth in the following paragraphs.

55. *Numerosity*. The members of the Class are so numerous that separate joinder of each member is impracticable. Upon information and belief, and subject to Class discovery, the Class consists of many thousands of members, the identity of whom are within the exclusive knowledge of Defendant and can be ascertained only by resort to Defendant's records. Through the evaluation of Defendant's data, it is possible to identify all members of the Class and the amount of improper fees paid by each Class member. Such specific information is not otherwise available to Plaintiff, but must be maintained pursuant to federal law, and is subject to suitable discovery.

56. *Commonality*. There are numerous questions of law and fact common to the Class relating to Defendant's business practices challenged herein, and those common

10

questions predominate over any questions affecting only individual Class members. The common questions include, but are not limited to:

    a. Whether Defendant breached its contract by charging multiple fees on an item;

    b. Whether Plaintiff and other members of the Class have sustained damages as a result of Defendant's assessment and collection of the improper fees;

    c. Whether Defendant breached the covenant of good faith and fair dealing;

    d. Whether Defendant unjustly enriched itself to the detriment of Plaintiff and members of the Class;

    e. Whether Defendant violated the Consumer Fraud Act;

    f. The proper measure of damages; and

    g. The declaratory and injunctive relief to which the Class is entitled.

57. *Typicality.* Plaintiff's claims are typical of the claims of the other Class members in that they arise out of the same wrongful business practice by Defendant, as described herein.

58. *Adequacy of Representation.* Plaintiff is an adequate representative of the Class because Plaintiff has a Defendant checking account and has suffered damages as a result of Defendant's assessment and collection of improper fees. In addition:

    a. Plaintiff is committed to the vigorous prosecution of this action individually and on behalf of and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in

particular, class actions on behalf of consumers against financial institutions;

b. There is no hostility of interest between Plaintiff and the unnamed Class members;

c. Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d. Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal work associated with this type of litigation.

59. *Predominance.* The questions of law and fact common to the Class as set forth in the "commonality" allegation above predominate over any individual issues. As such, the "commonality" allegations are restated and incorporated herein by reference.

60. *Superiority.* A class action is superior to other available methods and highly desirable for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is very small relative to the complexity of the litigation and since the financial resources of Defendant are enormous, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Defendant's misconduct will proceed without remedy. In addition, even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action

12

presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

61. Plaintiff and Class members suffer a substantial risk of repeated injury in the future. Plaintiff, like all members of the Class, is at risk of being assessed multiple fees on an item now and in the future. Plaintiff and the Class are entitled to injunctive and declaratory relief as a result of the conduct complained of herein. Money damages alone could not afford adequate and complete relief, and injunctive relief is necessary to restrain Defendant from continuing to commit its illegal actions.

62. All conditions precedent to bringing this action have been satisfied and/or waived.

### FIRST CLAIM FOR RELIEF
**(Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing)**
**(On Behalf of Plaintiff and the Class)**

63. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

64. Plaintiff and Defendant have contracted for bank account services. *See* Exs. A-B.

65. Defendant breached the terms of the account documents.

66. No contract provision authorizes Defendant to charge more than one fee on an item.

67. Under Minnesota law, good faith is an element of every contract pertaining to the assessment of overdraft fees. Good faith is also mandated by the Uniform Commercial Code ("UCC"), which covers banking transactions. Whether by common law or statute, all contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

68. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

69. Defendant has breached the covenant of good faith and fair dealing through its overdraft policies and practices as alleged herein.

70. Defendant harms consumers by abusing its contractual discretion in a number of ways that no reasonable customer would anticipate.

71. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them by the account documents.

72. Plaintiff and members of the Class have sustained damages as a result of Defendant's breach of the Contract and breach of the covenant of good faith and fair dealing.

## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)
### (On Behalf of Plaintiff and the Class)

73. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

74. Plaintiff, individually and on behalf of the Class, asserts a common law claim for unjust enrichment. This claim is brought solely in the alternative to Plaintiff's breach of contract claim and applies only if the parties' contract is deemed unconscionable or otherwise unenforceable for any reason. In such circumstances, unjust enrichment will dictate that Defendant disgorge all improperly assessed fees.

75. By means of Defendant's wrongful conduct alleged herein, Defendant knowingly assessed fees upon Plaintiff and the members of the Class that are unfair, unconscionable, and oppressive.

76. Defendant knowingly received and retained wrongful benefits and funds from Plaintiff and the members of the Class. In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and the members of the Class.

77. As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and the members of the Class.

78. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

79. Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to retain the benefits it received, and is still receiving, without justification, from the imposition of multiple fees on Plaintiff and members of the Class in an unfair, unconscionable, and oppressive manner. Defendant's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

80. The financial benefits derived by Defendant rightfully belong to Plaintiff and the members of the Class. Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds collected by Defendant. A constructive trust should be imposed upon all wrongful or inequitable sums received by Defendant traceable to Plaintiff and the members of the Class.

81. Plaintiff and the members of the Class have no adequate remedy at law.

### THIRD CLAIM FOR RELIEF
**(Consumer Fraud Act, M.S.A. § 325F.68 et seq.)**
**(On Behalf of Plaintiff and the Class)**

82. The Consumer Fraud Act prevents the "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice." M.S.A. § 325F.69.

83. Defendant is a "person" under the Consumer Fraud Act. M.S.A. § 325F.68.

84. Defendant misrepresented its actual fee assessment practices and misled and deceived its accountholders by assessing multiple fees on an item.

85. Plaintiff has been damaged by this practice and is entitled to actual damages, injunctive relief and reasonable attorneys' fees and costs. M.S.A. § 8.31(3a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class demand a jury trial on all claims so triable and judgment including the following:

a. Certification of the Class under Rule 23, designation of Plaintiff as Class Representative and designation of the undersigned as Class Counsel;

b. Restitution of all monies lost by Plaintiff and the Class as a result of the wrongs alleged herein in an amount to be determined at trial;

c. Actual damages in an amount proven at trial;

d. Pre- and post-judgment interest at the maximum rate permitted by applicable law;

e. Reimbursement of all fees, expenses, and costs of Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law;

f. A declaration that Defendant's fee policy and practice alleged in this Complaint is wrongful and unconscionable in light of its contractual promises.

g. An injunction prohibiting Defendant from breaching its Contract; and

h. Such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff, by counsel, demands trial by jury.

Dated: April 22, 2022

By: /s/*Karen Hanson Riebel*
Karen Hanson Riebel
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Avenue S., Suite 2200
Minneapolis, MN 55401-2159
612-339-6900
khriebel@locklaw.com

Lynn A. Toops*
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenandmalad.com

J. Gerard Stranch, IV*
BRANSTETTER, STRANCH & JENNINGS, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
gerards@bsjfirm.com

Christopher D. Jennings*
JOHNSON FIRM
610 President Clinton Avenue, Suite 300
Little Rock, Arkansas 72201
Telephone: (501) 372-1300
chris@yourattorney.com

\* *Pro Hac Vice* applications to be submitted

Counsel for Plaintiff and the Proposed Class

4875-0761-4747, v. 1